JOHN H. DIETZE, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
75 N. W. 2d 95

Filed February 24, 1956.   No. 33856.

*Winters & Lawlor*, for plaintiff in error.

*Clarence S. Beck*, Attorney General, and *Ralph D. Nelson*, for defendant in error.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a criminal action originally instituted by the State of Nebraska in a justice of the peace court of Dodge County, Nebraska, wherein John H. Dietze was charged with the offense of exceeding the speed limit in violation of the statutes in such cases made and provided. In that court Dietze was found guilty. From the adjudication he appealed to the district court. In the district court he was tried to the court, he having waived trial by a jury. In the district court he was convicted, and sentenced to pay a fine of $20 and to pay the costs of the prosecution amounting to $37.50. Thereafter he duly filed a motion for new trial which was

overruled. From the judgment and the order over-ruling the motion for new trial he brings the case to this court for review by petition in error. He is plaintiff in error but for convenience he will be referred to herein-after as defendant.

As grounds for reversal of the judgment the defend-ant asserts substantially that the court erred in find-ing him guilty since, as he says, there was no competent evidence that he was operating a motor vehicle in ex-cess of the speed limit; that the evidence was not suffi-cient to prove him guilty beyond a reasonable doubt; that the evidence upon which he was convicted was the reading of a radar machine admitted without sufficient foundation to make it admissible; that the judge erred in not disqualifying himself on account of manifest prejudice; and that the court erred in not granting a new trial.

The first, second, and third assignments of error are related and depend upon what the record discloses as to the facts as they appear in the bill of exceptions. They will therefore not be separately considered.

The record discloses that on March 9, 1955, the de-fendant was the operator of a Greyhound bus which he was operating westward on U. S. Highway No. 30. Just after 2 p. m. on that date he passed a point about 2 miles east of North Bend, Nebraska. Opposite this point and just off the highway was located a radar speed meter. As he passed the meter which threw a radar beam across the highway the meter registered his speed at 70 miles an hour according to a Nebraska highway patrolman who had charge of the meter. This rate of speed was 10 miles an hour in excess of the maximum permitted under law.

As foundation for the admission of this evidence there was testimony as to tests of the accuracy of the readings of the meter made by checking its readings with the known speed of other motor vehicles operated by other members of the highway patrol on that afternoon near

the time of the occurrence and later. The testimony as to how the meter operated was limited to statements that it threw a beam across the highway and when the beam was broken an indicator would indicate the speed of the object breaking the beam. The testimony as to the mechanics of the meter was that it operated from a battery. If the battery was fully charged the indicator of the meter would show the speed of the object breaking the beam, but if the battery was not fully charged it would register a speed less than the actual speed of the passing object, and that in no event would the instrument indicate a rate of speed in excess of the actual speed of the vehicle.

It is pointed out here that neither the foundational evidence nor the evidence as to speed was at any point objected to during the trial. The first objection came after trial and the judgment of the district court.

The defendant testified that he did not exceed the speed limit. This was not based upon observation at the time but upon assertions made pursuant to tests made by him that, because of governors on the motors, the bus could not have been driven more than 60 to 61 miles an hour. He was corroborated by the testimony of Clarence Crane, the shop foreman of the bus company, that the governor was sealed at 1,900 R.P.M.s, the effect of which would prevent operation in excess of 60 miles an hour.

It becomes apparent that in order to sustain the contention made by the defendant in the first three assignments of error it would be necessary to say that there was no competent evidence of probative value to sustain a finding that the defendant was exceeding the speed limit.

The record under the law will not permit this to be done. The defendant and the State cited in their briefs cases in which it is set forth that radar readings are admissible in proof of the speed of vehicles moving on highways. See, State v. Moffitt, 48 Del. 210, 100 A. 2d 778; State v. Dantonio, 31 N. J. Super. 105, 105 A. 2d

918; State v. Dantonio, 18 N. J. 570, 115 A. 2d 35. None are cited to the contrary. The defendant does not contend for a contrary rule, but only that there must be foundation more than was laid on the trial of this case.

In this view it must be said therefore that the evidence adduced as to speed was competent and it cannot well be said that it did not have probative value. The lack of foundation, if there was a lack, did not destroy the competency of the evidence.

If the defendant was not satisfied with the foundation laid he should have at the time objected on that ground. In a situation wherein the question of lack of foundation for admission of reading of speedometers was being considered the New Jersey Supreme Court in State v. Dantonio, 18 N. J. 570, 115 A. 2d 35, said: "The defendant points out that there was no affirmative evidence introduced by the State to establish that the speedometers in the Troopers' cars had been recently tested. It would, perhaps, have been the better course for the State to have introduced such testimony and presumably it would have done so if the defendant had raised the point in due time before the close of the trial. However, he did not in anywise question the Troopers on the subject and made no mention of it until the testimony had been fully completed and summations were taking place. Under these circumstances the defendant is hardly in any just position to attack the accuracy of the speedometers."

If this pronouncement is to be followed in the case at bar, and we think it should, the defendant may not now be heard to complain of the lack of foundation for the evidence of speed adduced by the State.

As already indicated the contention is only that there was no sufficient foundation. In support of this it is urged that this foundation may be laid only by the testimony of an expert witness regarding the construction, operation, and purpose of the particular machine, its margin of error, and the ways and means of testing its accuracy.

It is of course true that this is a proper method of laying the foundation for the admissibility of the records of speed of moving vehicles as shown by radar devices. See, State v. Moffitt, *supra;* State v. Dantonio, 31 N. J. Super. 105, 105 A. 2d 918; People of City of Rochester v. Torpey, 204 Misc. 1023, 128 N. Y. S. 2d 864; People v. Katz, 205 Misc. 522, 129 N. Y. S. 2d 8. This method however is not and should not be regarded as exclusive.

It is a well-established rule in this state that the foundation may be laid for the introduction by testimony as to the results of experimentation. City of Ord v. Nash, 50 Neb. 335, 69 N. W. 964; Falkinburg v. Prudential Ins. Co., 132 Neb. 831, 273 N. W. 478; Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627; Piechota v. Rapp, 148 Neb. 442, 27 N. W. 2d 682. None of these cited cases are like the one at bar in point of fact but they do declare the rule with regard to the admissibility of evidence which depends upon experiments.

The rule is neither new to the law nor to life. It is a rule which has been paramount in all of the steps of the human family in its progress from its most primitive state to its present condition. It is directly sustained by State v. Dantonio, 18 N. J. 570, 115 A. 2d 35. Should it not now be retained as a rule of adjective law and of human direction, provided it is surrounded by proper safeguards?

In the light of common knowledge and the experience of the ages it does not appear that anything is more convincing as to inanimate mechanisms than a course of experiments which discloses the production of unvarying results.

It was evidence of that type of experiment which provided the basis for the evidence of speed at which the defendant was operating the bus. We conclude that the evidence under these circumstances furnished a sufficient foundation for the evidence as to speed. Accordingly, the first three assignments of error are without merit.

The fourth assignment of error however advances a ground which we think requires a reversal of the judgment.

As already pointed out the defense was predicated, not upon direct evidence of what happened at the time, but solely upon circumstances which if believed would render the defendant not guilty of the charge against him. The defendant had the right to have these circumstances considered and weighed fairly and impartially.

The record of remarks of the trial judge seems to indicate that he had at least a fear that he would be incapable of considering such evidence fairly and impartially.

He stated that he had observed and talked with others who had observed Greyhound buses traveling greatly in excess of 60 miles an hour. If he had stopped there it is doubtful that it could be contended that he was incapable of fairly and impartially weighing the circumstances involved herein. He did not however stop there. He clearly indicated a probability that he could not consider fairly, along with other evidence as to speed, the evidence that this particular bus with the governor on it could not travel at a speed in excess of 60 miles an hour. If he could not consider this evidence fairly and impartially it could not be said that the defendant had the fair and impartial trial to which he was entitled.

This court has said: "Unless the record discloses an objection or an exception to remarks of a trial judge a complaint with regard thereto cannot be reviewed on appeal." Morrow v. State, 146 Neb. 601, 20 N. W. 2d 602. In another case it was said: "A prerequisite to review on appeal of alleged improper conduct of and statements by a trial judge, on the trial in the presence of the jury, is an objection and exception thereto." Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913. See, also, Hyslop v. State, 159 Neb. 802, 68 N. W. 2d 698.

These cases indicate that improper remarks of a trial

judge calculated to improperly influence the triers of the facts, if timely objected to, may be considered as ground of reversal on appeal. This is not such a case but is one wherein the judge is himself the trier of the facts. No reason appears why a different rule should apply.

In this case objection was timely made. At the time the remarks were made a request was made that the judge disqualify himself to try the case.

The right to a fair and impartial trial in this respect was a substantial right of the defendant and a failure to accord it to him was such an invasion of that right that he is entitled to have the judgment of the district court reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

CARTER, J., participating on briefs.