[Crim. No. 7259. First Dist., Div. Two. Aug. 16, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. PETER JACKSON MacLAIRD, Defendant and Respondent.

Kiernan Hyland, District Attorney, and Harold G. Spaulding, Deputy District Attorney, for Plaintiff and Appellant.

Robert Y. Bell, James A. Kealey, and Vartkes Yeghiayan for Defendant and Respondent.

SHOEMAKER, P. J.—The People of the State of California appeal from a judgment of the Municipal Court for the Central Judicial District, County of Sonoma, State of California, dismissing a complaint issued on a traffic citation for violation of section 22350 of the California Vehicle Code.

This judgment was reversed by the Appellate Department of the Superior Court for Sonoma County. We accepted certification under rules 62 and 63 of the California Rules of Court.

The agreed statement on this appeal shows that the defendant was cited for violation of section 22350 of the California Vehicle Code. The complaint issued thereon charged that defendant exceeded the prima facie speed limit as estab-

lished by posted speed limit signs and that said violation was determined by and through the use of a radar device.

At the trial, the prosecuting attorney advised the court that this was a "radar" case and that he intended to prove the installation, operation and accuracy of the radar machine through the testimony of the arresting officer. The court then inquired whether the People proposed to present an expert witness to establish the validity and accuracy of radar devices. The prosecuting attorney replied that they would not produce such a witness, whereupon the court, upon its own motion, dismissed the action, stating that the court would refuse to take judicial notice of the use, validity and accuracy of radar devices.

The sole issue presented is whether the trial court erred in refusing to take judicial notice of the use, validity and accuracy of radar devices.

In weighing whether the trial court committed error in refusing to take judicial notice of the "use, validity and accuracy of radar devices," we interpret this to mean taking judicial notice of the principle of radar as an electronic device which scientifically and accurately measures speed of a moving object. This is altogether different from judicially noticing the accuracy and operating efficiency of the particular radar device used to measure the speed of the defendant's vehicle in the case before the court.

It is common and general knowledge that radar was developed in England in the late 1930's. In its most elementary conception, it consists of a microwave transmitter sending out a directional signal which is reflected back to the transmission site by an object in its path. The reflected signal is received back by an antenna into a receiving unit in the radar, and basically the time between transmission and reception is measured electronically. Based upon the known speed of the signal, the time and speed factors provide the basis for an exact calculation of the distance between the radar and the reflecting object.

Radar has developed many uses since its introduction in the 1930's, not the least of which is the highly simple, precise and accurate radar device for measuring the speed of a moving vehicle.

Although the legal issue presented to this court stands as a case of first impression in California, the precise question has been litigated in a number of other jurisdictions. While there is some conflict of authority on whether the principle of radar

should be judicially noticed, the better-reasoned cases hold that it should.

In June 1955, the Supreme Court of New Jersey, in *State* v. *Dantonio*, 18 N.J. 570, at page 578 [115 A.2d 35, 39-40, 49 A.L.R.2d 460], stated: "Since World War II members of the public have become generally aware of the widespread use of radar methods in detecting the presence of objects and their distance and speed; and while they may not fully understand their intricacies they do not question their general accuracy and effectiveness. Dr. Kopper has pointed out that, in contrast to other radar methods, the method actually used in the speedmeter is rather simple and has been adopted by many law enforcement bodies; a recent tabulation indicates that speedmeters are being used in 43 states by almost 500 police departments. See *Radar Traffic Controls*, 23 Tenn.L.Rev. 784 (1955). The writings on the subject assert that when properly operated they accurately record speed (within reasonable tolerances of perhaps two or three miles per hour) and nothing to the contrary has been brought to our attention; under the circumstances it would seem that evidence of radar speedmeter readings should be received in evidence upon a showing that the speedmeter was properly set up and tested by the police officers without any need for independent expert testimony by electrical engineers as to its general nature and trustworthiness."

In *People* v. *Magri* (1958) 170 N.Y.S.2d 335, at pages 337-338, the New York Court of Appeals stated: "We think the time has come when we may recognize the general reliability of the radar speedmeter as a device for measuring the speed of a moving vehicle, and that it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it. . . ."

Other jurisdictions have followed New York's practical recognition that the scientific principle of radar can and should be judicially noticed. (See *City of East Cleveland* v. *Ferell* (1958) 168 Ohio St. 298 [154 N.E.2d 630]; *State* v. *Graham* (Mo.App. 1959) 322 S.W.2d 188; *United States* v. *Dreos* (D.Md. 1957) 156 F.Supp. 200.) The New York and New Jersey holdings are likewise supported by leading legal writers, including California's B. E. Witkin, who says: "The scientific accuracy of the device, properly handled, is scarcely open to question." (Witkin, Cal. Evidence (2d ed. 1966), § 663, p. 622.)

California Evidence Code, section 451 (mandatory judicial

notice) provides in part: "Judicial notice shall be taken of: . . . (f) Facts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute."

We have concluded that the validity and accuracy of radar devices is a proposition of such common and universal knowledge that it must be judicially noticed and there is no necessity to call an expert witness to establish this commonly known and accepted proposition. As stated in *Varcoe* v. *Lee* (1919) 180 Cal. 338, at page 344 [181 P. 223]: "Judicial notice is a judicial short-cut, a doing away with the formal necessity for evidence because there is no real necessity for it."

Under Evidence Code, section 451, judicial notice of the matters specified therein is *mandatory,* whether or not the court is requested to notice them. (California Evidence Code Manual (Cont.Ed.Bar 1966), Comment, p. 63.)

As indicated, this court's holding is limited to the proposition that a trial court is required to take judicial notice of the use, validity and accuracy of radar devices as a scientific method of measuring speed.

The judgment dismissing the complaint is reversed, and the cause is remanded to the trial court for further proceedings in accordance with the views herein expressed.

Agee, J., and Taylor, J., concurred.