**STATE of Delaware**

v.

**Mark HARPER, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Jan. 12, 1978.

Decided Jan. 12, 1978.

John T. Gandolfo, Jr., Deputy Atty. Gen., Wilmington, for the State.

J. Dallas Winslow, Jr., Chief Deputy Public Defender, Wilmington, for Defendant.

LONGOBARDI, Judge.

This is an appeal from a Magistrate's conviction of speeding. The Defendant contends that the results of the K–55 police radar unit should not be utilized as evidence by the State.

The State called Edward W. Sergent, Vice President of the manufacturer of the K–55 unit, as an expert. His testimony illustrated an extensive educational background in the scientific field of radar and radar equipment and his extensive vocational experience included the adaptation of the radar principle to the manufacture and use of police radar equipment. The Court concluded that he was qualified to discuss the scientific principles of radar, the construction and functions of the K–55 radar unit. In short, the witness testified that the K–55 is a microwave device utilizing the "Doppler Shift or Effect." Essentially, the radar device emits signals of a known frequency. When those signals are reflected from the car being checked, the difference in frequency caused by the movement of the checked automobile is calibrated into a velocity reading.

The principle known as the Doppler Shift is so well known and universally accepted that several states take judicial notice of the principle. *State v. Dantonio,* 18 N.J. 570, 115 A.2d 35 (1955); *State v. Tomanelli,* 153 Conn. 365, 216 A.2d 625 (1966); *State v. Graham,* Mo.App., 322 S.W.2d 188 (1959). Furthermore, the witness described internal functions designed to check the accuracy of the unit and whether it was operating properly. The "light test" and the "cal test" are internal calibration tests of the readout unit. External tests are also recommended. They include the use of a tuning fork, *Honeycutt v. Commonwealth,* Ky.App., 408 S.W.2d 421 (1966), or a test car with a calibrated speedometer.

■ The police officer who was operating the K–55 on the day in question was trained in its use and had made the necessary tests to insure its proper functioning and accuracy. Those tests took place just hours before the Defendant's automobile was checked and also at the end of the officer's shift. On both occasions, the tests indicated the proper functioning of the machine. Relying solely on his training and depending upon the accuracy of the unit after testing, he may give the speed of the Defendant's automobile as calibrated by the K–55. There is no necessity that he be qualified to explain the scientific principles involved with the unit. *State v. Moffitt,* Del.Super., 100 A.2d 778 (1953); *State v. Tomanelli, supra; State v. Dantonio, supra.*

■ So long as the unit was functioning, tests were made to check its calibration, the Defendant's automobile was the closest automobile in line with the police radar unit when it was being checked and the police operator was trained in its use, there is no basis to exclude his testimony. It is left to the jury to determine from the testimony of the police utilizing the unit whether it was operating properly, that it was accurate to a degree allowing but minor error and that it was the Defendant's automobile's speed that was checked.

The motion to strike the testimony is denied. IT IS SO ORDERED.